**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEVILLE MCFARLANE, EDWARD HELLYER, DEANNA COTTRELL, CARRIE MASON-DRAFFEN, HASEEB RAJA, RONNIE GILL, JOHN FRONTERA, SHARIQ MEHFOOZ, and STEVEN PANICCIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ALTICE USA, INC., a New York Corporation,<br><br>    Defendant. | Lead Case No. 20-CV-1297 (consolidated with 20-CV-1410) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................ 1

II.    BACKGROUND TO THE SETTLEMENT ................................................................. 2

    A.    The Data Breach .................................................................................................. 2

    B.    Procedural History ............................................................................................... 3

    C.    Discovery and Settlement Negotiations ............................................................. 5

III.   SETTLEMENT TERMS AND BENEFITS ................................................................. 7

    A.    Settlement Class ................................................................................................... 7

    B.    The Settlement Terms and Benefits to the Settlement Class.............................. 8

        1.  Identity Theft Protection and Credit Monitoring Package ........................... 8
        2.  Cash Payments .............................................................................................. 8
        3.  Injunctive Relief ........................................................................................... 9
        4.  Notice, Claims Process, and Settlement Administration............................. 10
        5.  Attorneys' Fees, Expenses, and Service Awards ........................................ 11

IV.    THE PROPOSED SETTLEMENT WARRANTS APPROVAL....................................... 11

    A.    Legal Standards for Approval ........................................................................... 11

    B.    Rule 23(e) and the *Grinnell* and Factors Are Satisfied ............................................ 13

        1.  Procedural Fairness - Rule 23(e)(2)(A-B)................................................... 13
        2.  Substantive Fairness - Rule 23(e)(2)(C-D) and Remaining *Grinnell* Factors........... 14

            a.   Rule 23(e)(2)(C)(i) / *Grinnell* Factors Nos. 1, 4, 5 and 6 – The Costs, Risks, and Delay of Trial and Appeal .................................................................. 15

            b.   Rule 23(e)(2)(C)(ii) – Effectiveness of Proposed Method of Distributing Relief ............................................................................................... 17

            c.   Rule 23(e)(2)(C)(iii) - The Timing and Terms of Class Counsel's Proposed Award of Attorneys' Fees ........................................................................ 18

            d.   Rule 23(e)(2)(C)(iv) - There Are No Additional Agreements Required To Be Identified Under Rule 23 ........................................................................ 19

            e.   Rule 23(e)(2)(D) - Class Members Are Treated Equitably........................... 19

i

      f.   *Grinnell* Factor No. 2 - Settlement Class Members' Reaction...................... 20

      g.   *Grinnell* Factor No. 3 - The Stage of the Warrants Final Approval .............. 21

      h.   *Grinnell* Factor No. 7 - Whether Defendant Can Withstand a Substantially Greater Judgement......................................................................................... 21

      i.   *Grinnell* Factor Nos. 8-9: Range of Reasonableness of Settlement................ 22

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................................ 23

VI.   THE NOTICE ADEQUATELY APPRISED CLASS MEMBERS.................................. 24

VII.  CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Charron v. Wiener,*
    731 F.3d 241 (2d Cir. 2013)....................................................................................... 22

*Christine Asia Co., Ltd. v. Yun Ma,*
    No. 1:15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................ 13

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)....................................................................................... 12

*City of Providence v. Aeropostale, Inc.,*
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)......................... 17

*Dolmage v. Combined Ins. Co. of Am.,*
    No. 14 C 3809, 2017 WL 1754772 (N.D. Ill. May 3, 2017) .................................................. 16

*Hillis v. Equifax Consumer Servs., Inc.,*
    No. 104-3400, 2007 WL 1953464 (N.D. Ga. June 12, 2007)................................................ 18

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................... 16

*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018)............................................................................. 20, 23

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................................. 14

*In re Brinker Data Incident Litig.,*
    No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ........................... 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
    574 F.3d 29 (2d Cir. 2009)........................................................................................ 24

*In re Global Crossing Sec. and ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................ 14

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.,*
    No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022)................................... 20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
    327 F.R.D. 483 (S.D.N.Y. 2018) ................................................................................ 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016) ................................................................. 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ...................................... 12, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................... 14, 19, 22

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................... 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................................................... 21

*In re Target Corp. Customer Data Sec. Breach Litig.*,
No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) ............................................ 20

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 22, 2012) ........................ 21

*In re Wawa, Inc. Data Sec. Litig.*,
No. CV 19-6019, 2022 WL 1173179 (E.D. Pa. Apr. 20, 2022) ................................................ 20

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................... 17

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................... 16

*Marisol A. by Forbes v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ........................................................................... 24

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ........................................................................... 19

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................... 14

*Rosenfeld v. Lenich, No.*,
18-CV-6720, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ............................................... passim

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014) ............................... 14, 15

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................................................ 6

*Velez v. Novartis Pharm. Corp.*,
   No. 04 Civ. 09194(CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................................ 11, 20, 22

*Yang v. Focus Media Holding Ltd.*,
   No. 11 Civ. 9051(CM) (GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........................ 14

**<u>Rules</u>**

Fed. R. Civ. P. 23 .................................................................................................................... passim

Plaintiffs Neville McFarlane, Deanna Cottrell, Edward Hellyer, Carrie Mason-Draffen, Haseeb Raja, Ronnie Gill, John Frontera, Shariq Mehfooz, and Steven Paniccia, individually and on behalf of the putative class, (collectively, "Plaintiffs"), submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Settlement (the "Motion").

## I.  INTRODUCTION

After more than two years of hard-fought litigation, the Parties reached a proposed Settlement of this consolidated class action.[1]  The Settlement provides a very favorable result for the Settlement Class, including substantial monetary benefits, identity theft protection and insurance, and injunctive relief.

Specifically, the Settlement provides Settlement Class Members with monetary relief that will: (i) reimburse Out-of-Pocket Expenses of up to $3,000 per Settlement Class Member who incurred expenses or losses as a result of the Data Security Incident, and (ii) reimburse each Settlement Class Member for up to three (3) hours of attested Time Spent responding to the Data Security Incident at a rate of $25.00 an hour, for a potential reimbursement of $75 per class member. In addition, all Settlement Class Members are eligible to receive three (3) years of 3-Credit Bureau Monitoring offered by Experian, including Credit Report, Identity Protection Services, Identity Restoration Services, and $1,000,000 in Identity Theft Insurance.  Further, Class Members who spent at least three hours responding to the Data Security Incident will have the option to receive an additional two (2) years of Identity Theft Protection and Credit Monitoring (for a total of five (5) years of Identity Theft Protection and Credit Monitoring) in lieu of Time Spent compensation. Finally, the Settlement provides injunctive relief benefits in the form of meaningful enhancements

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement" or "Settlement") (ECF No. 89-1).

to Altice's cybersecurity as it relates to the Settlement Class Members' personally identifiable information.

The Settlement involves a comprehensive notice program and user-friendly Claims process, which have been, and are being, implemented by the Settlement Administrator.  The Court-approved notice program provided for direct notice by mail, including reminder notices, and the creation of a Settlement Website.  *See* Declaration of Ana Espinoza Re: Notice Procedures ("Espinoza Decl."), (attached as Exhibit 1 to Federman Decl.), at ¶¶ 6-10.  Ultimately, the Settlement Administrator mailed notices to 52,838 Class Members' last known addresses and re-mailed 708 returned notices to forwarding addresses or addresses found through public source databases. *Id.* ¶¶ 6-8.  Accordingly, the Settlement Administrator attests that the direct notice mailings reached over 91% of the Class.  *Id.*

To date, and although the deadline to submit objections is September 6, 2022, the reaction from Settlement Class Members has been overwhelmingly positive and strongly supports final approval.  By submitting claim forms, some 1,844 Class Members have already affirmatively voted "yes" to this Settlement, while only one has opted out and no Settlement Class Member has objected. *See id.* at ¶¶ 13-16.

In light of the valuable benefits conveyed to members of the Settlement Class, and the significant risks faced through continued litigation, the Settlement is "fair, reasonable, and adequate," and merits final approval.  Fed. R. Civ. P. 23(e)(2).

## II.      BACKGROUND TO THE SETTLEMENT

### A.      The Data Breach

In February 2020, Altice announced that an unauthorized third party gained access to certain employees' email account credentials through a phishing incident.  As a result, the email boxes of impacted users were compromised, and within one of the compromised mailboxes was a password-

protected file that contained the personally identifiable information ("PII") of 52,846 current and former employees, including their names, employment information, dates of birth, Social Security numbers, and some driver's license numbers. On February 5, 2020, Altice sent notice letters to potentially impacted current and former employees.

### B.    Procedural History

On February 13, 2020, Brittany Wiley, a current Altice employee, filed a class action complaint against Altice in the United States District Court for the Southern District of New York relating to the Data Security Incident. ECF No. 1. On February 18, 2020, Edward Hellyer, a former Altice employee, filed a similar class action complaint against Altice in the United States District Court for the Southern District of New York relating to the same Data Security Incident. Both cases were assigned to the Honorable Judge Jesse M. Furman and were consolidated under *McFarlane v. Altice USA, Inc.*, Civ. No. 1:20-cv-01297-JMF (S.D.N.Y.). ECF No. 29.

On May 4, 2020, a First Consolidated Class Action Complaint ("Consolidated Complaint") was filed adding plaintiffs Neville McFarlane, DeAnna Cottrell, Carrie Mason-Draffen, Haseeb Raja, Melissa Pinson, Ronnie Gill, John Frontera, and Sariq Mehfooz. ECF No. 30. The Consolidated Complaint voluntarily dismissed Plaintiff Brittany Wiley due to an arbitration agreement she had executed as part of her employment with Altice, which prevented her from maintaining the claims in federal court. The plaintiffs in the Consolidated Complaint asserted claims for negligence, negligence per se based on violation of New York Labor Law, negligence per se based on violation of the Cable Communications Act, negligence per se based on the New York General Business Law, violation of the New York Labor Law, violation of the Cable Communications Act, unjust enrichment, and for injunctive and declaratory relief.

On June 15, 2020, Altice filed a motion to dismiss the Consolidated Complaint and a motion to compel arbitration as to certain plaintiffs. ECF Nos. 35 and 38. On July 27, 2020, the Plaintiffs

filed an Amended Consolidated Class Action Complaint ("Amended Consolidated Complaint"). ECF No. 42.  The Amended Consolidated Complaint added Steven Paniccia as a plaintiff while removing Melissa Pinson. The Amended Consolidated Complaint also added a claim for breach of implied contract and dismissed the claims for negligence per se based on the New York General Business Law and unjust enrichment.

On August 17, 2020, Altice filed a motion to dismiss the Amended Consolidated Complaint and a motion to compel arbitration as to certain plaintiffs.  ECF Nos. 45 and 47.  Plaintiffs opposed these motions.  ECF No. 54.

On March 8, 2021, the Court issued an order denying in part and granting in part Altice's motion to dismiss the Amended Consolidated Complaint. ECF No. 58. In the Order, the Court dismissed Plaintiffs' claims for violation of New York Labor Law and negligence per se based on New York Labor Law, but the Court denied Altice's motion as to standing and the breach of implied contract claim. Accordingly, Plaintiffs' claims for negligence, breach of implied contract, and injunctive relief survived Altice's motion to dismiss. The Court deferred ruling on Altice's motion to compel arbitration pending its review of requested supplemental submissions.

On March 29, 2021, Plaintiffs filed a supplemental memorandum in opposition to Altice's motion to compel arbitration. ECF No. 60.  Plaintiffs also filed a Second Amended Consolidated Class Action Complaint that alleged only claims for negligence, breach of implied contract, and injunctive relief.  ECF No. 59.

On April 15, 2021, the Court denied Altice's motion to compel arbitration.  ECF No. 63. On May 6, 2021, Altice filed its Answer to the Second Amended Consolidated Class Action Complaint.  ECF No. 66.

On May 18, 2021, Altice filed a notice of appeal in the United States Court of Appeals for the Second Circuit to appeal the District Court's Order denying Altice's motion to compel

arbitration.  ECF No. 69.  On September 1, 2021, the Second Circuit ordered the withdrawal of Altice's appeal, pursuant to the Parties' submission of a stipulation to withdrawal.  ECF No. 80.

### C.    Discovery and Settlement Negotiations

After the Court's Order denying in part Altice's motion to dismiss and Order denying Altice's motion to compel arbitration, the Parties began conducting discovery.

On May 27, 2021, the Parties exchanged Initial Disclosures pursuant to Federal Rule of Civil Procedure 26.  *See* Federman Decl. at ¶ 5 and n.2.

On June 14, 2021, Plaintiffs served Altice with requests for the production of documents and a set of detailed interrogatories.  That same day, Altice served Plaintiffs with interrogatories and requests for document production.  *See id.*

On June 25, 2021, the Parties participated in a telephonic conference to discuss whether and how Plaintiffs' discovery requests could be narrowed to facilitate expedited responses and document production from Altice.  By July 2, 2021, the Parties reached an agreement on narrowed interrogatories and document requests.  On July 13, 2021, Altice served Plaintiffs with informal interrogatory responses and produced several thousands of pages of relevant documents to Plaintiffs.  *See id.*

On July 19, 2021, the Parties participated in a full day mediation session with JAMS mediator Bruce A. Friedman.  Prior to the mediation, the Parties prepared and served detailed mediation statements, which set forth the legal and factual arguments in favor of their respective positions.  Further, prior to the mediation, Plaintiffs provided Altice with a proposed term sheet for a potential class settlement.  After a full day of discussions and negotiations, the mediation ended without a resolution.  However, the Parties continued to exchange relevant information and negotiate potential settlement terms with the help of Mr. Friedman.  The mediation and subsequent settlement discussions spanned several months and included exchanges of information between

the Parties about the Data Security Incident, potential damages, appellate issues, corrective actions that Altice has taken to date to improve and update its cybersecurity, and the experiences of Plaintiffs.  *See* Settlement Agreement (ECF No. 89-1), § I.K.

After months of continued back-and-forth, facilitated by Mr. Friedman, the Parties reached an agreement in principle. Thereafter, the Parties worked diligently to collect bids from competing settlement administrators, establish a notice program, and prepare a formal settlement agreement and the exhibits thereto, including proposed notices to the Settlement Class.

### D.    Preliminary Approval of the Settlement

On April 27, 2022, Plaintiffs moved the Court to grant preliminary approval of the Settlement, approve the notice plan as the best notice practicable under the circumstances, and schedule a Final Approval Hearing.  ECF No. 87.  Plaintiffs also moved to be appointed as Class Representatives and for their counsel to be appointed as Class Counsel.  *See* Fed. R. Civ. P. 23(g).

On May 12, 2022, pursuant to instruction from the Court, Plaintiffs submitted supplemental briefing on the issue of Plaintiffs' Article III standing after the Supreme Court's ruling in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).  ECF No. 91.  On May 19, 2022, Defendant submitted its response to the supplemental memorandum.  ECF No. 92.  On June 14, 2022, the Court entered an Order concluding that Plaintiffs have standing and that the Court "has jurisdiction to consider the settlement."  ECF No. 93.

On June 21, 2022, this Court entered an Order Granting Preliminary Approval of the Class Action Settlement and Approving the Notice Program.  *See* ECF No. 94 ("Preliminary Approval Order").  The Court found that the Settlement "is the result of serious, informed, and non-collusive arm's length negotiations[.]"  *Id.* at 4.  In addition, the Court found, among other things, that the Settlement "falls within the range of possible approval."  *Id.* at 3.  In fact, the Settlement satisfies

each factor set forth in Rule 23(e) of the Federal Rules of Civil Procedure and under applicable Second Circuit standards.

## III.    SETTLEMENT TERMS AND BENEFITS

The Settlement confers valuable benefits on the Settlement Class.  First, all Settlement Class Members are eligible to receive at least three (3) years of identity theft protection and credit monitoring services.  Second, Settlement Class Members are entitled to receive cash payments to reimburse them for the time they spent responding to the Data Security Incident and for out-of-pocket losses or expenses incurred as a result of the Incident.  Third, Altice has committed to implement and maintain significant remedial measures that will benefit all Settlement Class Members, regardless of whether they submit a claim.  These Settlement benefits could not have been obtained without this litigation.

### A.    Settlement Class

The Court's Preliminary Approval Order preliminarily certified a Settlement Class, consisting of 52,846 current and former Altice employees and its affiliated companies.  The proposed Settlement Class is defined as follows:

> All current and former employees of Altice USA, Inc. and its subsidiaries or predecessor companies Cablevision and Suddenlink in the United States and its Territories who received a Notification Letter stating that their PII may have been compromised during the Data Security Incident.

*See* Settlement Agreement (ECF No. 89-1), § II.HH.

The Settlement Class specifically excludes Altice's trustees, administrators, and attorneys; all Settlement Class Members who timely and validly submit a Request for Exclusion; the Judge(s) or Magistrate Judge(s) to whom the Action is assigned and any member of those Judges' staffs or immediate family members; any members or employees of defense counsel; and any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing,

aiding or abetting the criminal activity or occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge. *Id.*

**B.    The Settlement Terms and Benefits to the Settlement Class**

**1.    Identity Theft Protection and Credit Monitoring Package**

All Settlement Class Members are automatically eligible to receive three (3) years of the Identity Theft Protection and Credit Monitoring Package to be paid for from the Settlement Administrator Account. To receive the Identity Theft Protection and Credit Monitoring Package, a Settlement Class Member need only complete a simple enrollment form. *See id.* at § III.B. The Identity Theft Protection and Credit Monitoring Package will provide Settlement Class Members with extensive credit monitoring and privacy protection, including three (3) years of Experian's 3-Bureau Credit Monitoring, Identity Protection Services, Identity Restoration Services, and $1,000,000 in Identity Theft Insurance. *See id.* at § II.R. The retail price of an Experian package that includes each of these levels of protection is $19.99 per month.[2] Accordingly, this Settlement category alone provides a benefit worth approximately $720 to each Settlement Class Member.

**2.    Cash Payments**

In addition to the Identity Theft Protection and Credit Monitoring, the Settlement Administrator Account will fund the following fair and reasonable cash payments to Settlement Class Members:

Reimbursement of Out-Of-Pocket Expenses: Settlement Class Members who claim they suffered Out-of-Pocket Expenses because of the Data Security Incident, and who can provide reasonable documentation for such expenses or losses, will be eligible for a payment of the amount of loss up to $3,000. *See* Settlement Agreement (ECF No. 89-1), § III.A, ¶ 1.

---

[2] *See* https://www.experian.com/consumer-products/compare-identity-theft-products.html.

<u>Reimbursement for Time Spent</u>: Settlement Class Members who spent time in response to the Data Security Incident will be eligible for reimbursement of up to three (3) hours of time spent at a rate of twenty-five dollars ($25.00) per hour. To receive this payment, a Settlement Class Member need only provide a brief description of (1) the action taken in response to the Data Security Incident; (2) the time associated with each action; and (3) an attestation that the time was spent responding to or addressing issues relating to the Data Security Incident.[3] *Id.* at § III.A, ¶ 2.

As an alternative to receiving a cash payment, a Settlement Class Member who spent at least three (3) hours responding to the Data Security Incident can opt to receive an extra two (2) years of Identity Theft Protection and Credit Monitoring, which would be in addition to the three (3) years of Identity Theft Protection and Credit Monitoring already provided under the Settlement. *See id.* at § III.B, ¶ 2. Thus, Settlement Class Members who elect to receive the Extended Identity Theft Protection and Credit Monitoring Package, instead of the cash reimbursement for Time Spent, will receive a total of five (5) years of identity theft protection and credit monitoring. *Id.*

### 3.  Injunctive Relief

The Settlement will also provide all Settlement Class Members with benefits in the form of meaningful business practice changes relating to Altice's data security.

The remedial measures to be implemented and maintained by Altice for a minimum of five (5) years as a result of the Settlement include: (i) conducting at least annual penetration testing through an established third party IT security vendor; (ii) providing periodic anti-phishing training to employees, including directions about how to handle suspicious communications and documents, and encouraging personnel to report any concerns about Altice's information security systems; (iii) conducting phishing testing at least twice per year, with such testing to include

---

[3] Claims made for lost time can be combined with claims for reimbursement of out-of-pocket expenses but are subject to the same $3,000.00 cap.

sending mock phishing emails to employees to help them identify malicious emails and links; (iv) maintaining anti-malware software on all servers; (v) maintaining a company-wide encryption protocol wherein all PII is segregated and encrypted; (vi) ensuring strict access controls are maintained with respect to any Settlement Class Member PII and that such data is encrypted in transit and at rest; (vii) performing a security assessment for the organization based on the National Institute of Standards and Technology Cybersecurity Framework ("NIST CSF") and ensure that Altice is compliant with the NIST CSF; (viii) utilizing a Security Information and Event Management ("SIEM") tool to assist in identifying cyber-attacks; and (ix) establishing a protocol that includes advising the CEO, CFO, and other executive officers at least annually in writing of the budget and requests by the CIO for upgrading and maintaining the data security program. In addition, Altice has agreed to purge, delete, or scrub from Altice systems the PII of Settlement Class Members whose information is no longer necessary to be stored, including those Settlement Class Members whose employment at Altice ended before January 1, 2020, subject to Altice's internal record retention and hold policies and process. *Id.* at § III.H.

These investments inure to the direct benefit of the Settlement Class, whose PII remain in Altice's computer systems. The adoption of these remedial measures will substantially improve the protection of the Settlement Class Members' PII stored by Altice.

### 4. Notice, Claims Process, and Settlement Administration

As further consideration to the Settlement Class, Altice has also agreed to bear the costs of the Settlement Administrator providing notice, processing Claim Forms and requests for exclusion, and administering the Settlement, including the distribution of the Settlement benefits. These costs will in no way reduce the other benefits afforded to Settlement Class Members. *See id.* at § III.E.

### 5. Attorneys' Fees, Expenses, and Service Awards

Additionally, Altice has agreed to separately pay Plaintiffs' Counsel's attorneys' fees, reimbursement of litigation expenses, and service awards to Plaintiffs that may be awarded by the Court. Plaintiffs' Counsel have moved for an award of $531,018.72 in attorneys' fees, $18,981.28 in litigation expenses, and service awards to Plaintiffs of $2,750 each. Altice will pay such attorneys' fees, costs, and service awards, in the amounts awarded by the Court, entirely separate from the relief being made available to Settlement Class Members. Accordingly, the payment of such fees and expenses will not at all reduce the other benefits afforded to Settlement Class Members. *Id.* at § III.F-G.

## IV. THE PROPOSED SETTLEMENT WARRANTS APPROVAL

The Settlement is the result of vigorous litigation, the exchange of documents and other discovery, and extensive arm's length negotiations among the Parties with the assistance of experienced JAMS mediator Bruce A. Friedman. *See id.* at § I.K. The Settlement provides valuable benefits and monetary compensation to Class Members as well as favorable changes to Defendant's data security measures. The Settlement compares favorably to previous data breach settlements when weighed against the risks associated with continued litigation. Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Plaintiffs' Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).

### A. Legal Standards for Approval

Courts encourage, and public policy favors, the compromise and settlement of class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *see also* Herbert B. Newberg, *Newberg on Class Actions* ("Newberg") § 13.44 (5th ed. 2020) ("The law favors settlement, particularly in class actions and other complex

cases where substantial resources can be conserved by avoiding lengthy trials and appeals . . . . This preference for settlement underscores the presumption, discussed in the succeeding section, that courts will presume a proposed settlement to be fair in the presence of certain factors.").

Rule 23(e) requires the Court to determine if the settlement is "fair, reasonable, and adequate" after considering:

> whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P 23(e)(2).[4]

In addition, to determine whether a settlement is approvable, the Second Circuit generally considers the factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id*. at 463 (citations omitted).

Courts in this Circuit have recognized that the Rule 23(e) factors "clarify[] and supplement[] the *Grinnell* factors." *Rosenfeld v. Lenich*, No. 18-CV-6720, 2021 WL 508339, at *3 (E.D.N.Y.

---

[4] The first two prongs address the "procedural fairness" of the settlement, while the last two prongs address the "substantive fairness." Fed. R. Civ. P. 23 Advisory Committee Note (2018).

Feb. 11, 2021); *see also  In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., No. 05-MD-1720, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("There is significant overlap between the Rule 23(e)(2) and the Grinnell factors," which courts in this Circuit have acknowledged complement one another).

### B.    Rule 23(e) and the *Grinnell* and Factors Are Satisfied

Rule 23(e) and the *Grinnell* factors weigh in favor of granting final approval.  Plaintiffs will first demonstrate that the procedural and substantive Rule 23(e) factors have been met, and then will turn to the additional *Grinnell* factors not otherwise encompassed by the Rule 23(e) factors.

### 1.    Procedural Fairness - Rule 23(e)(2)(A-B)

"Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, constitute the procedural analysis of the fairness inquiry." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (internal quotations omitted).

First, the Class Representatives' interests are aligned with the interests of the Class because they suffered the same harm as other Class Members.  Indeed, the Settlement Class Members were affected in the same way from the same operative fact since they were all notified that their PII was potentially exposed in the Altice Data Security Incident.  Thus, the Settlement Class is "sufficiently cohesive."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 827 F.3d 223, 232 (2d Cir. 2016).  Further, Class Counsel are experienced class action attorneys who have adequately represented the Settlement Class through two years of contentious litigation, including surviving Altice's motions to dismiss, challenges to standing, and attempts to compel individual arbitration. *See, e.g.,* ECF Nos. 58, 63, 80; *see also* Federman Decl., ¶ 14.

Second, the Settlement is the product of extensive arm's-length negotiations conducted by experienced counsel who are knowledgeable in complex consumer class actions, including data

breach class actions. *See* Federman Decl. at Exhibits 2-3; *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM) (GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (finding that experience of the attorneys involved demonstrate that the class was well-represented at the bargaining table). The Parties were only able to reach the Settlement after conducting extensive motion practice, exchanging relevant discovery, and participating in a full day mediation with the assistance and input of Bruce A. Friedman, a JAMS mediator with years of experience mediating data breach class settlements. *See* Section II.B-C, *supra*. During the mediation and in the months of subsequent discussions, the Parties engaged in hard-fought negotiations to reach agreement on the terms of the Settlement. A settlement "will enjoy a presumption of fairness" when, as here, it "is the product of arms-length negotiations conducted by experienced counsel, knowledgeable in complex class litigation." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 34-35 (E.D.N.Y. 2019) (same); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (holding that involvement of experienced mediator "strong indicator of procedural fairness"). Accordingly, the Settlement is procedurally fair.

## 2. Substantive Fairness - Rule 23(e)(2)(C-D) and Remaining *Grinnell* Factors

At the final approval stage, courts need not "decide the merits of the case or resolve unsettled legal questions," nor "foresee with absolute certainty the outcome of the case." *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 21, 2014). Instead, in deciding substantive fairness, courts "assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

14

The substantive fairness inquiry of Rule 23 considers the following: (i): the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Additionally, Fed. R. Civ. P. 23(e)(2)(D) requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."

The Rule 23 factors subsume *Grinnell* factors 1, 4, 5, and 6. *Rosenfeld*, 2021 WL 508339, at *5-6. The remaining *Grinnell* factors are independent from the Rule 23 inquiry. Each of these factors are addressed below and each support granting final approval of the Settlement.

### a. Rule 23(e)(2)(C)(i) / *Grinnell* Factors Nos. 1, 4, 5 and 6 – The Costs, Risks, and Delay of Trial and Appeal

As discussed above, Rule 23(e)(2)(C)'s first factor, the "costs, risks, and delay of trial and appeal, subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Rosenfeld*, 2021 WL 508339, at *5-6 (internal quotation marks omitted).

Class actions, like the instant action dealing with complex data security issues, have a "reputation as being most complex." *Id.* at *5 (internal quotation marks omitted); *see Shapiro*, 2014 WL 1224666, at *10 ("It has long been recognized that complex class actions are difficult to litigate. The legal and factual issues involved are always numerous and uncertain in outcome."). Indeed, absent the instant Settlement, Plaintiffs would have had to "to survive summary judgment, prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages. Moreover, they would also need to certify and maintain the class, over the [] Defendants' possible opposition." *Id.* Instead, Plaintiffs were able to secure a settlement providing substantial monetary

benefits to the Settlement Class and significant changes to Altice's data security practices while avoiding the expense and delay of continued litigation. Courts have held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *See Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010) ("As federal courts in this Circuit have consistently recognized, litigation inherently involves risks, and the purpose of settlement is to avoid uncertainty.").

Here, Plaintiffs understand that proceeding to trial is risky. For example, Plaintiffs would have to establish that Defendant was negligent in maintaining adequate data security measures, which would involve a battle of the experts regarding highly complex technical issues surrounding the security of computer databases and cyberattacks. *See, e.g., In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."). Indeed, while courts have granted class certification of data breach class actions in the past, others have declined to do so, highlighting the risks of continued litigation. *See, e.g., Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 1754772, at *9 (N.D. Ill. May 3, 2017) (denying certification of data breach class action because, *inter alia*, case "will require individualized damages inquiries for each class member").

While Plaintiffs are confident that the Action has merit, prevailing at trial would create substantial risk and delay. Advancing the case to trial would likely take years, and would involve numerous fact witnesses, experts, and the introduction of voluminous documentary evidence. The Court "should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Moreover, any judgment

favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Litigation. *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014).

By settling, Plaintiffs avoid the risk associated with continuing litigation and guarantee a quicker recovery to the Settlement Class. The Settlement prudently "take[s] the bird in the hand instead of the prospective flock in the bush." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (internal quotation marks omitted).

### b. Rule 23(e)(2)(C)(ii) – Effectiveness of Proposed Method of Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class member claims." *Rosenfeld*, 2021 WL 508339, at *6 (internal quotation marks omitted). A plan of allocation need not be perfect but instead "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The method of distributing benefits under the Settlement is straightforward and the result of extensive negotiation between highly competent counsel, with the input of the mediator. As set forth in above (Section III.B), the Settlement makes available to all Settlement Class Members at least three (3) years of Identity Theft Protection and Credit Monitoring. To receive this benefit, a Settlement Class Member need only fill out the simple enrollment form. *See* Espinoza Decl. at Exhibit E. The Settlement also proposes two forms of monetary relief: (i) reimbursement for out-of-pocket expenses related to the Data Security Incident for those who submit a claim form along with supporting documentation, and (ii) reimbursement for Time Spent for those who submit a claim form wherein they attest and describe how they have spent their time responding to the Data

Security Incident. *See id.* Finally, the Settlement provides injunctive relief in the form of meaningful data security enhancements to better protect the PII of the Settlement Class.

All claims are being processed by the Settlement Administrator with the oversight of Class Counsel. *See* Settlement Agreement (ECF No. 89-1) § V. The Settlement Administrator, KCC, is a well-respected claims administration firm that has administered more than 7,200 class action settlements. *See* ECF No. 89-3. Further, to the extent any Settlement Class Member disputes a claim determination related to Out-of-Pocket Expenses and/or Time Spent reimbursements, the dispute (if unresolvable) will be submitted to a neutral at JAMS Resolution Center who would act as the claims referee. *See* Settlement Agreement (ECF No. 89-1) § III.C, ¶ 5.

The method of processing and distributing benefits is rational and effective. This factor supports granting final approval.

### c. Rule 23(e)(2)(C)(iii) - The Timing and Terms of Class Counsel's Proposed Award of Attorneys' Fees

The next factor under Rule 23 is the "terms of any proposed award of attorneys' fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). As set forth in the fee motion filed contemporaneously herewith, Plaintiffs' Counsel request an award of $531,018.72 in attorneys' fees and request reimbursement of litigation expenses in the amount of $18,981.28. This request is well within the range of reasonable considering the significant benefits made available under the Settlement and the more than two years of attorney work and costs that have been committed to this case on an entirely contingent basis. *See* Fee Motion, filed separately; *see also Sackin v. TransPerfect Global, Inc.,* Case No. 1:17-cv-01469-LGS (Dec. 14, 2018) (ECF No. 74) (awarding $715,000 in fees and $17,748.95 in expenses based on a percentage of the available settlement that offered similar settlement benefits but to a class of less than 5,000 members); *Hillis v. Equifax Consumer Servs., Inc.*, No. 104-3400, 2007 WL 1953464 at *4-5 (N.D. Ga. June 12, 2007) (finding

that settlement making class members eligible for three to six months of credit monitoring at retail value of $8.95 per month resulted in potential value of in-kind benefits of $100 to $221 million); *cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding that attorneys' fees awards as a percentage of the fund must take into consideration the entirety of the fund made available to class members). Moreover, any attorneys' fees and expenses will be paid only after being awarded by the Court and after the Settlement receives final approval. *See* Settlement Agreement (ECF No. 89-1), § III.G.

Accordingly, this factor weighs in favor of granting final approval.

### d. Rule 23(e)(2)(C)(iv) - There Are No Additional Agreements Required To Be Identified Under Rule 23

Next, the Court should consider whether there are any other agreements "required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). There are no agreements required to be identified.

### e. Rule 23(e)(2)(D) - Class Members Are Treated Equitably

The final Rule 23 inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As detailed *supra*, Section IV.B.2.b, the Settlement Agreement applies to all Settlement Class Members equally as they each receive the same Identity Theft Protection and Credit Monitoring and the same payment based on the time they spent in regard to the Data Security Incident and whether they have documented proof of out-of-pocket expenses. *See In re Payment Card*, 330 F.R.D. at 47 (finding equitable treatment where uniform benefits were made available to the class); *see also Rosenfeld*, 2021 WL 508339, at *7 (class members treated equitably where "agreement appropriately and fairly accounts for the key point of differentiation among class members' claims"). For these reasons, the Class Members are treated equitably relative to each other, which supports granting final approval of the Settlement.

### f.  *Grinnell* **Factor No. 2 - Settlement Class Members' Reaction**

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. In fact, the lack of objections may well evidence the fairness of the Settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *16; *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Here, the Settlement Class's initial reaction to the Settlement is very positive and strongly supports final approval.  The claims deadline is October 4, 2022.  As of this filing, a total of 1,844 claims have already been received.  *See* Espinoza Decl., ¶ 6.  This amounts to a claims rate of 3.5% of the 52,846 Class Members, with this rate expected to grow before the October 4, 2022 claims submission deadline.  This compares favorably to the claims rates in other data breach class action settlements.  *See, e.g., In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) (approving data breach class settlement where the "number of claims submitted reflects a response rate of approximately 0.25%"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with a claims rate of roughly 0.23 percent); *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2022 WL 1173179, at *5 (E.D. Pa. Apr. 20, 2022) (finding that claims rate in "the range of 0.035 percent (without the expansion) to 2.6 percent (with the expansion) actually compares favorably with other data breach settlements").

The deadline for Settlement Class Members to request exclusion or to object to any aspect of the Settlement is September 6, 2022.  To date, only one class member has submitted a request to be excluded from the Settlement.  *See* Espinoza Decl. at ¶ 15.  As of the date of this filing, neither

Class Counsel nor the Claims Administrator has received a single objection to any aspect of the Settlement. *See id.*, ¶ 16.

The overwhelmingly positive reaction from the Settlement Class strongly favors granting final approval.

### g. *Grinnell* Factor No. 3 - The Stage of the Warrants Final Approval

The next factor is "whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020). Here, Plaintiffs vigorously litigated the Action for more than two years, including an extensive pre-suit investigation, the preparation of detailed complaints, successfully opposing aggressive motions—including Altice's motion to dismiss and motion to compel arbitration, which resulted in a favorable order for Plaintiffs that Altice sought to appeal. In addition, Plaintiffs obtained relevant discovery from Altice, including documents and information about the details and scope of the Data Security Incident. Through these efforts, the Parties were well informed and were able to reach the proposed Settlement which provides substantial monetary and injunctive benefits to the Settlement Class.

### h. *Grinnell* Factor No. 7 - Whether Defendant Can Withstand a Substantially Greater Judgement

In an action against a large corporation, the defendant "is likely to be able to withstand a more substantial judgment." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 22, 2012). However, this alone does not undermine the reasonableness of the settlement. *See id.*; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 494 (S.D.N.Y. 2018) (settlement "fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement"). Here, while Altice could arguably

withstand a greater judgment, there was substantial risk that Plaintiffs would not be able to achieve better results than those presented through the Settlement. *See* Section IV.B.2.a, *supra*.

### i. *Grinnell* Factor Nos. 8-9: Range of Reasonableness of Settlement

The final *Grinnell* factors require the Court to consider both "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also In re Payment Card*, 330 F.R.D. at 47-48 (these factors "are often combined for the purposes of analysis."). In analyzing these factors, the Court should also consider the risks of litigation, as outlined above, as "[t]he range of reasonableness for a settlement is 'a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Rosenfeld*, 2021 WL 508339, at *8 (quoting *Wal-Mart Stores*, 396 F.3d at 119).

Given the nature of this litigation, it would be challenging to estimate the amount of possible recovery for the proposed Settlement Class Members. According to Plaintiffs' Counsel's research, no data breach class action has yet to reach trial. For this reason, Plaintiffs compares the Settlement's benefits to those of other data breach class action settlements, demonstrating that the benefits to Settlement Class Members compare favorably to those approved by other courts. *Compare* Section III, *supra* (describing the benefits under the Settlement, including at least 3 years of identity theft protection and insurance, reimbursement for time spent, and reimbursement of out-of-pocket expenses or losses) *with Sackin v. TransPerfect Global, Inc*., Case No. 1:17-cv-01469-LGS (Dec. 14, 2018) (ECF Nos. 63, 74) (approving settlement providing 3 years of identity theft protection and reimbursement of out-of-pocket expenses); *see also In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, Case No. 1:17-cv-01035-WMR (N.D. Ga.) (ECF Nos. 187-1, 190) (approving settlement providing reimbursements for out-of-pocket losses and time spent); *In re Zappos Sec.*

*Breach Litig.*, No. 12-cv-00325 (D. Nev.) (ECF No. 418 at 2) (settlement provided "10% coupon" for Zappos goods).

Further, the Court should consider the added data security protections provided to Settlement Class Members by way of the proposed injunctive relief, which would substantially improve Defendant's data security measures. *See supra*, Section III.B.3; *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (emphasizing remedial measures achieved in settlement that required defendant to change data security systems and policies and finding that such relief benefits all class members "including those who did not submit a claim").

In view of the foregoing, Plaintiffs submit that the non-monetary and monetary benefits provided by the Settlement exceed the range of reasonableness for similar class actions.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class, finding that the required Rule 23 elements were met.  *See* ECF No. 94 at 2-3; *see also* ECF No. 88 at 21-24.  Now at the final approval stage, the Court's preliminary conclusions remain appropriate.

Indeed, the Settlement Class still meets the requirements of Rule 23(a).  Numerosity is satisfied here because Defendant's records indicate that there are 52,846 Settlement Class Members. Commonality is met because there are numerous issues of fact and law common to the Settlement Class, including, *inter alia*, whether: (a) Defendant had a duty to safeguard the Settlement Class Members' PII; (b) Defendant was negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on Defendant's systems. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding these issues common to the class).  Typicality is satisfied because "each class member's claim arises from the same course of events"—the Data Security Incident—"and each class member makes

similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal citations omitted). Adequacy is met because (1) Plaintiffs possess the same interests as the proposed Settlement Class Members given that all were allegedly injured in the same manner based on the same allegedly inadequate security measures and the same data breach, and (2) Class Counsel are qualified, experienced, and generally able, and have adequately conducted the litigation, there is adequacy of representation. *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

The Settlement meets the requirements of Rule 23(b). Common questions predominate here, including questions of whether: (a) Defendant had a duty to safeguard the Settlement Class Members' PII; (b) Defendant was negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on Defendant's systems. Finally, class certification is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the 52,846 Settlement Class Members who would otherwise need to provide nearly the same, if not identical, legal and factual arguments and evidence.

Accordingly, final certification of the Settlement Class is appropriate.

## VI.    THE NOTICE ADEQUATELY APPRISED CLASS MEMBERS

As the Court preliminarily found, the Notice to the Settlement Class satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* ECF No. 94 at 4 (approving the Notice Program).

Here, the Settlement Administrator employed direct notice, sending the Postcard Notice to Settlement Class Members directly via U.S. mail. *See* Espinoza Decl., ¶ 6. Although some guidelines counsel that as little as a 70% reach is reasonable for the purposes of satisfying due

process, *see e.g.,* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) at 3 ("It is reasonable to reach between 70-95%"); Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d Ed. 2010) at 27 (explaining the "reach" of a proposed class action notice plan is normally within a range of 70-95%), here, the direct Notice program reached more than 91%, far eclipsing the 70% mark. *See* Espinoza Decl., ¶ 9.  Further, KCC established a publicly accessible Settlement Website to which Settlement Class Members may refer for information about the Settlement and submit online Claim Forms and inquiries. *See id.* at ¶ 11. The Settlement Administrator posted the Detailed Notice and Claim Form on the Settlement Website, as well as other important documents and deadlines. *Id.*  In addition, the Settlement Administrator will mail reminder notices approximately 30 days prior to the claims deadline to those Settlement Class Members for whom claim forms have not been received.  *Id.* at ¶ 10.

The proposed Notices are plain and easily understood. The Notices describe the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form, objecting, and/or appearing at the Final Approval Hearing.  *See* Espinoza Decl. at Exhibits C-D; *see also* ECF No. 94 at 4.

Plaintiffs submit that the Notice Program issued pursuant to the Settlement meets the requirements of due process and the Federal Rules of Civil Procedure, supporting final approval.

## VII.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for final approval and enter an order substantially similar to the proposed Order for Final Judgment, filed contemporaneously herewith.

Dated: August 23, 2022

Respectfully submitted,

/s/ *William B. Federman*
William B. Federman
(S.D. New York #WF9124)
A. Brooke Murphy
(admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com
abm@federmanlaw.com

*Interim Lead Counsel for Plaintiffs*


Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
*racocelli@weisslawllp.com*


Cornelius P. Dukelow
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
Telephone and Facsimile: (918) 588-3400
*cdukelow@abingtonlaw.com*

*Additional Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *William B. Federman*
William B. Federman